UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT EARL DAVIS,

    Plaintiff,

v.                                        CAUSE NO. 3:22-CV-129-SJF

DEANNA J. LAUGHLIN,

    Defendant.

OPINION AND ORDER

Robert Earl Davis, a prisoner without a lawyer, is proceeding in this case "against Deanna J. Laughlin in her individual capacity for compensatory and punitive damages for administering a tuberculosis test on [April 30, 2020,][1] despite Davis alerting her that he is allergic to the solution used for the test and medical records documenting the allergy, in violation of the Eighth Amendment." ECF 12 at 5. Nurse Laughlin filed a motion for summary judgment. ECF 75. Davis filed a response, and Nurse Laughlin filed a reply. ECF 81, 82, 87. The motion for summary judgment is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party."

---

[1] Davis alleged in his complaint that the tuberculosis test occurred on March 28, 2020, but both parties now agree the test actually occurred on April 30, 2020.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the first step of the analysis, a serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005). Some of the indications of a serious medical condition include whether if untreated it could result in "further significant injury or unnecessary and wanton infliction of pain," it "significantly affects an individual's daily activities," or it features "chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (cleaned up). Accordingly, a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996); *see also Gibson v. McEvers*, 631 F.2d 95

(7th Cir. 1980) (failure to treat a common cold does not violate Eighth Amendment); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) ("the injuries of which Henderson complains—breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are, objectively speaking, relatively minor.").

Nurse Laughlin submits an affidavit and Davis' medical records, which show the following facts: On March 22, 2012, Davis had a bilateral chest x-ray completed to observe for suspected tuberculosis ("TB"), which is a serious bacterial infection. ECF 76-3 at 3. Davis did not show any signs of TB at that time. *Id.* On March 28, 2016, Davis received a purified protein derivative ("PPD") skin test to check for latent TB. *Id.*; ECF 76-1 at 436-40. A PPD test is an intradermal injection into the skin of the forearm which produces a pale elevation of the skin. *See* PPD Skin Test - StatPearls - NCBI Bookshelf (nih.gov) (last accessed September 13, 2024). After the injection, the medical provider should wait between 48 and 72 hours before measuring the patient's reaction. *Id.* The medical provider should measure in millimeters only the induration (firm swelling) of the reaction, not the erythema (redness). *Id.* An induration greater than 5.0 mm in diameter can be considered a positive test, based on other factors. *Id.* Davis' March 28, 2016, PPD test returned negative results and no drug allergies were known or documented at that time. ECF 76-3 at 3; ECF 76-1 at 436-40.

Over the next few years, Davis received follow-up TB evaluations and PPD tests which showed evidence of latent TB but did not show any active TB. ECF 76-3 at 3.

3

Specifically, Davis received a PPD test on March 30, 2017,[2] which showed no reaction, and a PPD test on June 19, 2019, which showed a reaction of 2.0 cm. *Id.*; ECF 76-1 at 234-35, 239-41, 361-63. No drug allergies were known or documented during or after either of these tests. *Id.*

On March 28, 2020, Davis was seen for his annual wellness encounter and had a TB review completed. ECF 76-3 at 3-4; ECF 76-2 at 387-89. A chest x-ray was ordered. *Id.*

On April 30, 2020, Davis presented to medical for a PPD test because his last PPD test was not charted as being read. ECF 76-3 at 4-5; ECF 76-2 at 391-93. Nurse Laughlin saw Davis for this visit, educated him on TB, and obtained his consent for the PPD test. *Id.*[3] After Davis signed the consent form for the PPD test, Nurse Laughlin performed the PPD test with no difficulty and informed Davis he would receive a pass to return to the nurse's station on May 2 to have his PPD read. *Id.* No drug allergies were known or documented at that time. *Id.*

On May 2, 2020, Davis' PPD was read in the nurse's station displaying a 2.0 cm reaction. ECF 76-3 at 5. Upon examination and discussion with Davis, he did not display any signs or symptoms of active TB. *Id.* Therefore, no chest x-ray was ordered at that time. *Id.* No drug allergies were known or documented at that time. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.

---

[2] Davis argues there's no evidence he received a PPD test on March 30, 2017, because this test is "nowhere recorded" in his medical records. ECF 82 at 4-5. But Davis' medical records do record a PPD test was "Administered" to him on March 30, 2017. ECF 76-1 at 362.

[3] Davis concedes he consented to the PPD test, but argues he only signed the consent form because Nurse Laughlin told him the TB test was mandatory and he'd have to be quarantined if he refused the test. ECF 82 at 8-9.

4

Davis is proceeding against Nurse Laughlin for administering the PPD test on April 30, 2020, despite knowing he was allergic to the PPD solution used in the test. ECF 12 at 5. Nurse Laughlin argues summary judgment is warranted in her favor because Davis' alleged allergy to the PPD solution was not an objectively serious medical need, as he does not allege he suffered from any serious symptoms associated with his allergic reaction. ECF 76 at 7-11. Specifically, Nurse Laughlin argues the only symptoms Davis relates to the alleged allergic reaction are bumps and redness on his forearm surrounding the injection site, which do not amount an objectively serious medical need. *Id.* at 10. She argues these symptoms did not mandate treatment, significantly affect his daily activities, result in significant injury, pose a risk of needless pain, or result in any medical consequences. *Id.* at 10-11.

In his response, Davis argues he had an objectively serious medical need because his latent TB is a serious medical disorder. ECF 81 at 8-12. But Davis is proceeding against Nurse Laughlin not for deliberate indifference to his TB, but for deliberate indifference to his allergy to the PPD solution. ECF 12 at 5. Therefore, the question is not whether Davis' TB is an objectively serious medical need, but whether Davis' allergic reaction to the PPD solution is an objectively serious medical need.

Here, Davis provides no evidence his allergy to the PPD solution was an objectively serious medical need. Specifically, there's no evidence Davis has ever been diagnosed with an allergy to the PPD solution, and his medical records indicate he has no known drug allergies. *See* ECF 76-1 at 235, 240, 362, 437. And accepting as true that Davis has an undiagnosed allergy to the PPD solution, there's no evidence this allergy

5

is an objectively serious medical need. Davis doesn't argue or provide evidence he required any treatment after Nurse Laughlin injected him with the PPD solution, and states only that the PPD solution caused his arm to "swell up" and "itch really bad for days." ECF 81 at 11. Davis' allegations describe only a basic allergic reaction, the type of which many people wouldn't even seek medical treatment, and there's no evidence his allergic reaction resulted in significant injury, significantly affected his daily activities, or featured chronic and substantial pain. *See Gutierrez*, 111 F.3d at 1373; *Walker v. McGlorn*, No. 17-CV-933-NJR-RJD, 2019 WL 2360906, at *3 (S.D. Ill. May 13, 2019) (undiagnosed soy allergy that caused minor weight loss, cramping, bloating, and constipation did not rise to the level of a serious medical need); *Williams v. Pamela Nation*, No. 2:14-CV-314-WTL-WGH, 2015 WL 8492504, at *3 (S. D. Ind. December 10, 2015) (a rash caused by a suspected allergic reaction was not objectively serious even where plaintiff alleged he suffered side effects including anxiousness, irritability, stomach cramps, and abdominal pain). Accordingly, Davis' allegation that his undiagnosed allergic reaction to the PPD solution caused swelling to his arm and itchiness for several days is insufficient to show he suffered an objectively serious medical need. Summary judgment is therefore warranted in favor of Nurse Laughlin.[4]

For these reasons, the court:

(1) GRANTS Nurse Laughlin's motion for summary judgment (ECF 75); and

---

[4] Because the court concludes Davis has not shown an objectively serious medical need, it does not reach Nurse Laughlin's alternative arguments that she was not deliberately indifferent to that medical need and she is entitled to qualified immunity.

(2) DIRECTS the clerk to enter judgment in favor of Nurse Laughlin and against Robert Earl Davis and to close this case.

SO ORDERED on September 20, 2024.

                                              s/ Scott J. Frankel
                                              Scott J. Frankel
                                              United States Magistrate Judge